Mr. Bordiaga, how many Fifth Circuit arguments have you kept count? Quite a few. Apparently I have a couple more coming up in November. It's good to be here, Judge. Thank you very much. May I please have the floor? You know who I am. I'm here on behalf of Ms. Lowe. I would like to start by stating that Ms. Lowe fully embraces both matter of Rosas Ramirez and matter of Bucha Agor, if I'm pronouncing it correctly, both of which hold that adjustment of status constitutes an admission for immigration purposes under two different sections of the law. And there's one other thing where the parties agree, and that is as stated on page 14 of Respondent's Brief. The only issue in this case is whether Ms. Lowe's alien smuggling conviction occurred within 5 years of, quote, any entry. So the issue is whether her admission by virtue of adjustment of status necessarily also constituted an entry. And that's what the Court has to decide today. The government claims that the two terms are essentially interchangeable. And here the Board in an un- Can I interrupt? Yes, sir. Just to make sure, is that the issue before us? Because describe to me again procedurally where we are. She — the I.J. finds that she did smuggle. She challenged the sufficient proof to the BIA. We're not challenging that. I know that. But just so I know the history, goes to the BIA on that. There wasn't proof of that. BIA rules against your client. You move to reopen. Is that when you said reopen because counsel was ineffective for not arguing Martinez and Marquez? For not — for not arguing that admission and entry — Yeah. The Martinez-Marquez lockjob. Essentially, yes. Then the Court denies your motion to reopen. You move to reconsider. Correct. That's denied. That's also denied. Okay. So what we're reviewing is the denial of a motion to reconsider, a denial of a motion to reopen. Correct. But am I right? Now, here's — it's important to get you know this law better than I do. Is our review therefore restricted by virtue of you being up alleging error in a denial of a motion to reconsider? Because somewhere I thought from reading too many briefs that we would affirm if there's any perceptible rational approach to justify the BIA's decision. So I guess the question, to give you a question, is can we affirm on any ground other than the one stated, which was BIA's disagreement with our law? Well, this Court has long held that it can affirm on other grounds if there are other grounds. But what's the best case that states that? I thought we'd said the opposite. I believe, well, Enriquez — Enriquez says is the case I'm thinking of we said the opposite, that we have to affirm only on the ground the BIA gives us, otherwise we would remand. No, Enriquez allows for that exception, that if the — that unless there is — I don't remember the exact wording, but Enriquez does allow for affirming on other grounds. Could we go through the record and say, for example, that her allegation supporting the motion to reopen, that she had received ineffective assistance, didn't contain all the Lizada elements? If those aren't there, could we affirm on that independent ground? No, I don't think so, because that's not the basis. What you have here is a clear error of law. Okay. I know, but that was my question. If they made a clear error of law, but there's an independent basis to affirm, can we affirm on that, or can we not? If there's an independent basis for affirming that provision of law, that — not on just anything else in there. Okay. Right. Go ahead. No. If there was another reason other than the reason the Board gave for saying that the two are equivalent, if you could find another — If the BIA had articulated a second reason, we would look at it. Right. But we don't have authority — You can't just go through the record and say, no, we think that this, that or the other. No. But if the — if the BIA — here the BIA rested its decision on Bucra. Yes. And Bucra doesn't say what the BIA wanted it to say. But if there were some other basis for sustaining the BIA's conclusion that entry and admission were synonymous, then you could use that. But you can't go back, I don't believe, and find other things in the record that aren't related to the issue, the legal issue that's involved. Final question, because I'm asking a lot of questions. The government seems to say, well, even if we acknowledge the Fifth Circuit, as in Martinez and Marquez, both twice said entry means coming in, whereas adjustment necessarily is after you've come in. So the government acknowledges that's our law. They then say, but you haven't said it exactly in the context of 1227. And therefore, it's ambiguous and we get Chevron deference. Well, first of all, it's not ambiguous because the board has long held exactly what entry is. And that definition of entry has stood from 1973 in matter of Pierre up to this year, Sixth Circuit decision, also citing matter of Pierre. And there's a decision from this court citing the finding that entry means what Pierre says it means. So, but there's no Chevron deference to an unpublished decision that relies on a published decision that doesn't hold what they're trying to have it say. At best, they would have Skidmore deference if their reasoning were persuasive, which it is not, because the entry is entry and has long been entry and there is no ambiguity in entry anymore. In fact, the ambiguity is in admission, which is what the BIA said in Bucrat, that, you know, the statutory definition of admission doesn't really cover everything that admission means. And one of the reasons that perhaps the Congress did not reenact the definition of entry was that the definition of entry that previously existed also did not fully cover entry. And that's why the BIA had to come up with its own definition of entry in Pierre. So that we now have a situation where the ambiguity is in admission, but not in entry. And what the Board said in Bucrat, where it said that we have long, if I may quote, Well, the most recent Webster's unabridged dictionary describes assimilated as to make similar or to compare, but that does not mean that because you can compare it to that, that it isn't. You can compare me to a lot of people and say I'm similar to a lot of people, but I'm not those other persons. And to say that adjustment of status is assimilated simply means that the grounds of inadmissibility, most of them, not all of them, because the some of the documentary grounds don't, of inadmissibility, don't apply in adjustment of status. But it's similar, it's compared to. But that doesn't make it an entry. And that was the sole reason that the Board gave in this case for finding that they were the same, and that certainly doesn't give it Chevron deference. I don't believe it even gives them Skidmore deference. And the fact that this definition of entry, matter of Pierre, has been consistently followed both by the BIA. There's a BIA decision after Ira-Ira, after the definition of entry was removed from the statute, in matter of, if I can, FPR, it's one of those asylum cases, at 24 INN Decision 681, where the issue was that of determining the eligibility to file for asylum based on whether the person had applied within one year of his last arrival to the United States. And there the Board said, well, you know, arrival, we're going to give it its plain meaning, just like we did in matter of Pierre, which gave us a four-pronged decision or interpretation of how you define entry. Arrival means the last coming to the United States from a trip abroad or from a place abroad. Well, entry has always meant what it is stated in matter of Pierre. And those are the four elements. As stated in Pierre, it involves one, a crossing into the territorial limits of the United States, i.e., physical presence. Sotomayor, has any other circuit disagreed with our analysis of Marquez and Martinez? Is there a split on this? There's no split on the definition of entry. Okay. Has OIL continued to disagree with it always? Not to my knowledge. This is the first time I've found OIL trying to equate admission and entry. They may have in other cases, but not that I'm aware of, the definition. What they say here in their brief, where they try to say that if you take the definition of admission, which includes something about lawful entry, and substitute our definition of entry, then it doesn't make sense. Well, that would be true, but we're not substituting the whole definition, because entry encompasses both the lawful entries, which follow inspection and admission, and the unlawful ones, where they evade inspection. But if you just substitute the portion of the lawful entry, then there is absolutely no conflict. And I would note also that this Court also in Anderson v. Napolitano, 611 F. 3rd 275, a 2010 decision, noted that a person who had been previously deported and not obtained permission to reapply after deportation, managed to get a visa, came into the United States, was inspected, admitted, had a stamp in her passport saying you've been admitted, but this Court found that nonetheless the entry was unlawful for purposes of reinstatement, because she was not eligible to be admitted, even though she was admitted by mistake. So that clearly shows that the question of admission needs a little work, and that's why the Board is having to revisit the issue so many times. But it has not revisited the issue of entry. That has been solid for a long time. And I would also note one thing that I think is perhaps the clearest thing, and that's what was noted in Matter of Bulkery, where it said that page 573, Section 237a1a of the Act applies to an alien who is, quote, inadmissible at the time of entry or of adjustment of status or violated status. Clearly, Congress did not think that entry and adjustment of status were identical. They would not have had to say time of entry or of adjustment of status if they thought that one subsumed the other. So you cannot find that Congress intended them to be the same, because there's a presumption that, you know, each word in the statute has to have meaning, and that's the meaning that Congress gave it, that those two are distinct concepts. And there is absolutely no reason to upend the many years of following Matter of Pierre. You have the Fourth Circuit in De Leon in 2014, De Leon v. Holder, 761 F. 3rd, 336, specifically citing Pierre and listing the four of the elements. There they collapse it into three. They make the inspection admission or evasion inspection into one element rather than two, the way Pierre counts it. You have the Sixth Circuit in Lopez v. Sessions, which is at 851 F. 3rd, 626. And then this Court in U.S. v. Ramirez-Carcamo, 559 F. 3rd, 384, where they state entries and aliens entering into the territory of the United States, either being inspected by immigration officials or successfully evading inspection, and they rely you rely on a Third Circuit case from before IHRA-IHRA showing that this Court considers that the law has not changed between now and following IHRA-IHRA. And the Court there continued, The government thus applies the same definition of entry across statutes as well it should. In the absence of a reasoned explanation for the change in interpretation or relevant distinction between the statutory provisions, the government has no warrant to use Chevron deference to take opposing positions about the same concept just because it helps them in some cases to do one thing and helps them in other cases to do something else. That's in Lopez about entry. So I would argue that here there is no reasoned explanation for the change. There is likewise no relevant distinction between entry in this context and entry in other contexts. Entry means entry, period, paragraph. Thank you. And unless there are questions, I reserve the rest of my time. Roberts. You've saved time for about a minute. Thank you. Ms. Leiser. Good morning. May it please the Court. Sherry Leiser, appearing on behalf of the United States Attorney General. One huge and very, very key argument that Ms. Lowe is leaving out is that the term entry is no longer defined in the INA. Before the passage of IHRA, it was defined in the INA. It was found in former 8 U.S.C. 1101, 813a, and that definition was eliminated and it was replaced with the definition of admission. So she's arguing that we essentially rely on a definition that no longer exists and the government argues that this is a huge gap in the statute. Congress, sure, there are places in the INA where the term entry is still found, but that term is not defined and that is where a huge gap exists. What does the term mean when Congress eliminated the definition? Didn't give us a new definition, but it's still found in portions of the INA. And that's where the government argues this Court can get to step two and can look at the Board's interpretation, finding that, you know, the Board in this case took a step back because it isn't defined anymore in the INA and sort of looked at the statute to figure out what does an entry now mean and looked at, for example, the definition of admission. Like Ms. Lowe pointed out, it's defined as an alien lawfully entering the United States, which only occurs pursuant to inspection and authorization by an immigration officer. So the Board found that we don't have this umbrella term entry that now covers both situations when an alien presents him or herself at the border and is permitted to come into the country pursuant to inspection and authorization and the opposite of that when an individual sneaks into the country. We now have two bifurcated terms. We have a lawful entry, which is synonymous with an admission. It only occurs when an individual is inspected and authorized to come into this country and an unlawful entry, and the government argues that it is reasonable that in this particular circumstance that Ms. Lowe's adjustment of status, it did constitute an admission and consequently also constituted a lawful entry because we look at when Congress made this amendment replacing entry with admission, it entitled that amendment treating persons present in the United States without authorization as not being admitted. Here we have a situation where Ms. Lowe, she unlawfully entered the United States, she snuck across the border, and she later adjusted her status, and that adjustment of status is the only thing that authorizes her to be in this country. She certainly is not someone who's in this country without any authorization whatsoever. We have a — Entry. Any entry. And our settled law, I may be oversimplifying it, our settled law says entry means what dictionaries say it means, coming in, whereas to adjust status, you have to already be in, in the story. Yeah, I would argue that, you know, it's really important not to sort of look at a dictionary definition in this case, to really look at the context because we're not really talking about a situation where if somebody walks into the kitchen or enters a living room, we're talking about entering this country, and because we no longer have that former definition, we have to take a look at the INA as it now stands. Well, what about our law that's given definition to that word? I don't think it affects this case at all, and I don't think — Different statute? Because it's dealing with, as far as I — do you mean Marquez and Martinez, or are you talking about the previous — Both, Marquez and Martinez. Okay. I think Marquez and Martinez presented different situations than this case because this Court, in both Martinez and Marquez, looked at the language that was at issue in both of those cases and found that it was plain and unambiguous. And I would argue that the language at issue, any entry in this case, is not plain and unambiguous because there is this gap in the statute regarding what it means. We no longer have that definition that we used to have. So that takes us to Step 2, whereas in Marquez and Martinez, this Court wasn't able to — or determined that it was not able to get to Step 2 because all the language in that case was unambiguous. And I'll point out, in Marquez, in pointing out Marquez's arguments and pointing out the government's arguments as to why an adjustment of status can constitute an admission in certain circumstances, this Court did say on page 559 that the board's interpretation had considerable promise, but it just couldn't reach that issue because the language was plain and unambiguous. It specifically said, is there enough ambiguity in the statutory context to allow us to give deference to the board's interpretation in this slightly different context and regarding a slightly different term than in Martinez? And the Court said, we conclude that there is not. That was on page 561. So I would submit that this case, because there is this gap and because we're not dealing with unambiguous language, presents a completely different circumstance than Marquez or than Martinez. The position O'Neill is taking is that those cases are correct but distinguishable? Yes. Or those cases are wrong themselves because of the gap that's emerged? No, that those cases are correct but distinguishable. So, Marquez, we were really looking at whether an adjustment of status application can constitute an application for admission. And this Court held, well, you know, we have this definition for application for admission, and so it doesn't fit in that. And we have this court violation. What court anywhere in the country has accepted your view of 1227? Of this particular statute? I have not seen in my career, and I've talked to other people in my office, any case that deals with 1227A1EI dealing with what any entry is. It usually deals with whether the individual's conduct was an alien smuggling act. I have never seen any case that revolves around this particular language. So far as I've seen, I think this is an issue of first impression. So just to be clear, the government's sole argument to us to affirm is the one you've made. It isn't that there's an independent basis that we could affirm on? Correct. I think because it's a motion for reconsideration, the only issue really is whether the board made an error of fact or an error of law in holding that her 2007 adjustment of status fit in within any entry for the reasons that it gave. And that's the only issue that's before this Court. Unless your honors have any more questions? Thank you, Ms. Gleiser. Thank you. Ms. Burdiaga, you say time for a bow. Thank you. Very briefly, the government, I believe, is trying to create an ambiguity that doesn't exist. They do not address the fact that entry has not only been firmly defined by this Court and other courts, but also by the BIA. And the BIA has never changed its entry, its definition of entry. And it also runs afoul of the fact that Congress knows very well how to say admission when it means admission and entry when it means entry. And this was noted in Bucha, for example, that in 237A1A, Congress included both entry and adjustment of status. Excuse me. In 237A1A, they substituted admission for entry. In 237A1H, they left only entry. And in 237 — no, I'm sorry. I'm getting this wrong. In 237A1H, they left admission where it had been previously entry. And in 237A1EI, which is the provision at issue here, they had only entry rather than admission or entry, as they have in 237A1A. So I think that you can't say that Congress didn't know what it was doing when it put the term entry here. And it used it four or five times in that same statute. Before an entry, at the time of an entry, or within five years after any entry, helps an immigrant enter unlawfully. And they — to enter unlawfully, they clearly mean coming in unlawfully. They do not mean adjusting their status unlawfully. They mean coming in unlawfully in that very provision. What do you do with Ms. Glaser's point that entry is no longer defined in the INA but has been replaced? I don't think it makes any difference because it is used there, and it is used — Congress is presumed to know how the agency has defined a term when it uses that term. It doesn't have to be defined. And maybe the reason that they left it out was precisely because the prior definition had not worked, and that's why the BIA and the courts up to the Supreme Court had had to come to new definitions of what entry meant. And since entry had been settled law by the BIA, accepted by all the courts, the BIA recited a number of courts in Matter of Pierre in establishing that definition, and that definition has stood for decades, ever since 1973. It's a little inconsistent. I mean, if it was working, why would Congress say it's not working, we need to delete the definition? I got lost on that one. I'm sorry. I'm sorry, what? I got lost on that one. You said it wasn't working, and that's why Congress deleted the definition, and now you say, oh, no, it's worked all these years. The definition in the statute wasn't working. And the BIA, much as it has to do now with admission, the definition of admission in the statute isn't working, and the BIA is having to come up with saying, well, gee, it also includes this, and it also includes the other. So I think what Congress did was say, we'll let the agency define entry. The agency has already defined entry. We know what the agency's definition of entry is. That has worked for decades. Why didn't they just include the agency's definition of entry instead of deleting their old definition? Well, you'll have to ask them. I don't think they felt it was unnecessary. They substituted one definition for the other and didn't feel that entry needed a new definition because it was adequately defined by the agency and accepted universally by the courts. And I don't think there's any reason now, particularly on this very skimpy rationale that is given in this case, which basically cites another board decision for a provision that it doesn't stand for because they are relying on BUCRA for their position that the two terms are interchangeable. And the quote they have from BUCRA is nothing but the saying that a person whose adjusting status is assimilated to the position of somebody who is seeking entry. And like I said, you know, assimilated to is not the same as being that. And that's not what the issue was in BUCRA. BUCRA was not concerned with what an entry is. BUCRA was concerned with what an admission is. And they were saying that this is what we've always said. They're assimilated to that status. And that's what the board has always said. The same time that the board has always said that entry means A, B, C, D. They have said that they're assimilated to that position. There's no conflict between those two. And this decision from the BIA merely recites that quotation from BUCRA as being its sole justification for finding that the definition of entry had changed. Thank you very much. Roberts.